UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

      Plaintiff,

    v.              Case No. 09-CR-170

PETER T. ELLIOTT,

      Defendant.

---

**GOVERNMENT'S SENTENCING MEMORANDUM**

---

The United States of America, by its attorneys, United States Attorney James L. Santelle and First Assistant United States Attorney Gregory J. Haanstad, submits the following sentencing memorandum in support of its recommendation that Peter T. Elliott be sentenced to 135 months of imprisonment and be ordered to pay $3,632,945.10 in restitution.

### I. Background

Peter Elliott was an attorney who practiced in West Allis, Wisconsin. In connection with his practice, he maintained an interest on lawyers trust account (IOLTA) at Associated Bank. Beginning in approximately 1996, Elliott began using client IOLTA funds for his own purposes. He was able to conceal that he was doing so by operating a Ponzi-like scheme out of his IOLTA account: recently deposited client funds were used to pay older obligations as they came due.

This particular aspect of the scheme eventually proved to be unsustainable. By September 25, 2008, the IOLTA account balance had fallen to $46,339.06, which was not sufficient to cover the client payments that were coming due. For the next six weeks, Elliott executed a type of check-kiting scheme in which he would deposit into the IOLTA account at Associated Bank checks drawn

on his personal account at Wells Fargo Bank. Within days of presenting a particular Wells Fargo check to Associated Bank for deposit into the IOLTA account, Elliott would request that Wells Fargo stop payment on the check. He would then deposit another check from his Wells Fargo personal account into the Associated Bank IOLTA account. By repeatedly depositing into the IOLTA account similarly-sized checks drawn on the Wells Fargo account, staggering his stop payment order, and then depositing additional checks drawn on the Wells Fargo account, Elliott briefly caused a "float," i.e., the illusion that there was more money in the IOLTA account available to pay amounts drawn on the IOLTA account than was actually available. He then wrote checks on the artificially inflated IOLTA account. This cycle continued for approximately six weeks, during which time Elliott deposited into the IOLTA account – and subsequently stopped payment on – a total of 57 checks totalling more than $35 million.

## II. Sentencing Procedure

In determining an appropriate sentence, courts first calculate the applicable advisory Sentencing Guidelines. *Gall v. United States*, 552 U.S. 38, 49; *United States v. Nance*, 611 F.3d 409, 417 (7th Cir. 2010). While advisory, the Guidelines remain the "starting point and the initial benchmark" for sentencing. *Id.* After correctly calculating the Guidelines, sentencing courts must consider the factors set forth in 18 U.S.C. § 3553(a) and select a sentence that is sufficient but not greater than necessary in light of those factors.

### A. Sentencing Guidelines calculations

In anticipation of sentencing, the United States Probation Office has prepared a presentence investigation report (PSR), in which it calculates Elliott's total offense level as 31, his criminal history category as I, and the resulting guidelines range as 108 to 135 months. The calculations in

the PSR are correct, and neither party has objected to them. The Court should adopt those guidelines calculations.

**C.     Other Statutory Sentencing Considerations**

While this Court must give due regard to the sentencing guidelines, *see* 18 U.S.C. § 3553(a)(4), the guidelines are, as the name suggests, advisory. *United States v. Booker*, 543 U.S. 220, 267 (2005). Thus, while the guidelines are an important starting point, *see Gall*, 552 U.S. at 49, the Court may "tailor the sentence in light of other statutory concerns as well." *Id.* at 245-46. Those other statutory concerns encompass the traditional sentencing factors set forth in the Sentencing Reform Act, and generally fall into three categories: the nature of the offense; the history and character of the defendant; and the needs of the public and any victims. *See, e.g., United States v. Ranum*, 353 F. Supp. 2d 984, 989 (E.D. Wis. 2005) (Adelman, J.); The government's position is that a sentence of 135 months – which is at the top of the Guidelines range – is reasonable and appropriate in light of all of these statutory sentencing factors.

1.     Nature of the offense

Elliott executed a massive financial fraud with far-reaching and significant impact on both individual and institutional victims. The check-kiting component of his scheme involved $35 million in bad checks; the total real loss to victims was more than $3.6 million. Elliott's kiting of $35 million in checks took place at the end of a decade-long practice of routinely spending his client's money.

The client money that Elliott held in trust was of two principal types: (1) most of the money came from closings on his clients' mortgage refinances or home sales – Elliott was supposed to hold the proceeds temporarily in his IOLTA account before using them to pay off the client's prior

3

mortgage; and (2) another significant portion of the client trust money represented deceased's estates – in those instances, Elliott was supposed to hold the money temporarily in his IOLTA account before dispersing the funds to the deceased's family and other beneficiaries. But rather than paying the money as was required, Elliott regularly used it for his own purposes.

As a result of Elliott's actions, mortgages went unpaid, foreclosure actions were brought, and family estates were lost. The client-victims of Elliott's fraud suffered devastating consequences. Some of them have submitted letters to the Court that explain – in real and vivid accounts – the financial and emotional impact that Elliott's fraud has had. These accounts provide a stark contrast to the personal purposes to which Elliott directed the client funds. His fraud appears to have been a means of supplementing his income in order to sustain a lifestyle (a lifestyle that included a $1.38 million home) that his legitimate income alone could not.

    2.    <u>History and character of the defendant</u>

Elliott is sixty-two years old and has no prior criminal record. PSR at ¶¶ 46-50, 54. He and his three brothers grew up in suburban Milwaukee, in a financially secure household headed by their two parents. PSR at ¶ 55. After high school, Elliott attended college at Dartmouth in Hanover, New Hampshire, where he graduated magna cum laude. Elliott then attended the University of Wisconsin Law School, graduating in 1974. He practiced law from 1974 until 2009, when his license was revoked after he pleaded guilty to this offense. His annual income was as high as $240,000 while he was a practicing attorney. PSR at ¶¶ 72-74.

This type of background ordinarily is to a person's benefit and typically makes criminal activity less likely. Elliott's solid upbringing, education, and other advantages thus make his offense even more inexplicable, and make him in some ways more culpable than many other, less fortunate offenders. "Criminals who have the education and training that enables people to make a decent

4

living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime." *United States v. Jaderny*, 221 F.3d 989, 996-97 (7th Cir. 2000).

  3. <u>Needs of the Public and the Purposes of Sentencing</u>

Given the magnitude and seriousness of Elliott's offense – particularly when judged in terms of the amount of financial loss, the number of victims, the significant financial and emotional impact on those victims, and Elliott's abuse of his position of trust as a lawyer – a significant period of imprisonment is necessary to provide just punishment and to promote respect for the law.

A substantial prison term also is necessary to deter Elliott from engaging in future criminal conduct. Viewed in isolation, Elliott's lack of a criminal record might suggest a low risk of recidivism. But the nature of his conduct substantially undercuts that notion. Elliott's was not a one-time, impulsive, aberrant act in an otherwise law-abiding life. His offense took place over an extended period of time and involved repeated criminal conduct over the course of twelve years. Viewed in this context, the absence of a prior record does not indicate a low risk of recidivism.

The need to deter more generally also requires a significant term of imprisonment. Two aspects of offenses like Elliott's make general deterrence a particular concern. First, again, Elliott was able to spend client money without detection for twelve years. Second, Elliott's fraudulent enterprise was lucrative, making the allure of similar offenses particularly strong. Each of those factors further supports a substantial term of imprisonment in order to deter others who might be tempted to engage in similar conduct. *Cf. United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994)("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it.").

5

A sentence that includes a 135-month term of imprisonment is necessary, in short, to achieve the purposes of sentencing. Such a sentence would deter both the defendant and others in the community from committing similar offenses in the future, would promote respect for the law and would not depreciate the seriousness of this offense.

### III. Conclusion

Based on the foregoing, the government asks that the court impose a sentence of 135 months of imprisonment. The government also asks that the Court order, pursuant to 18 U.S.C. § 3663, that Elliott pay $3,632,945.10 in restitution to victims as set forth in paragraph 91 of the PSR.

Respectfully submitted at Milwaukee, Wisconsin, on November 2, 2010.

JAMES L. SANTELLE
United States Attorney

By:

s/GREGORY J. HAANSTAD
First Assistant United States Attorney
Gregory J. Haanstad: 1036125
Office of the United States Attorney
Eastern District of Wisconsin
517 East Wisconsin Avenue, Room 530
Milwaukee, Wisconsin 53202
Telephone: (414) 297-4581
Fax: (414) 297-1738
E-Mail: greg.haanstad@usdoj.gov